## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| ) | |
| JANE POE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No._____ |
| ) | JURY TRIAL DEMANDED |
| JOHN DOE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

Plaintiff, Jane Poe, through undersigned counsel, hereby sues JOHN DOE and alleges:

### INTRODUCTION

Defendant in this matter used false pretenses to impregnate Plaintiff, a woman he had never met, without her consent.  To accomplish this crime, Defendant and his paramour first conspired to recruit the Plaintiff to act as a surrogate mother to carry to term an embryo that had been created through *in vitro* fertilization.  Plaintiff had placed her profile on a website that connects surrogates to prospective parents for noble reasons – that is to help a couple that could not have a child enjoy the gift of life, and to give life to an unborn baby.  Defendant's paramour contacted Plaintiff and told her that she and her husband wished to have a baby.  The paramour did not tell Plaintiff however, that in fact she and the Defendant John Doe intended to swap the Defendant's sperm into the *in vitro* process, and that it was not her husband's sperm, but Defendant's, that would be used to create the embryo.

Plaintiff was very careful in vetting the couple for whom she would carry a child.  She met the husband, whom she perceived to be a good person.  She was impressed by the fact that

he came from a large and loving family.  He was married to the intended mother.  He appeared to be someone who would be a good father to the child she was creating.  Based on these facts and her personal impression of the husband, Plaintiff made the decision to share her body with the intended husband and begin the surrogacy process with the goal of carrying a child for this man, the husband.

In the process, Plaintiff was further assured by the fact that the husband was medically vetted for diseases, including sexually transmitted diseases, and for compatibility with Plaintiff.  Only after meeting the husband, desiring to create a child for him, and being told that the husband had passed medical vetting for diseases and compatibility, did Plaintiff submit to the invasive process of having an embryo placed in her uterus.  Only with the assurances she had received, did she undertake the monumental and task of carrying the baby, giving birth to the baby, and handing the baby over to the commissioning parents.

But, it turns out, the husband was also being deceived.  Defendant and his paramour had schemed all along to, and did, swap Defendant's sperm into the *in vitro* fertilization process.  Plaintiff was impregnated not by the man she intended and consented to be impregnated by, but by Defendant.  Defendant's genetic material was put in her against her will and without her consent, violating her body and her heartfelt personal choices.  She created a child not for a man whom she met and whom she judged to be a good man and whom she had thoughtfully chosen to share her body and womb with, but for a total stranger who schemed to violate her body in a most devious and deranged manner.  She had consented to being impregnated only by the man who had been presented to her as the father.  She believed she was creating a child who would be born legitimately into a marriage and that there could be no claim of illegitimacy.  She undertook the painful and giving surrogacy process, in which she had to part with a baby she had just

2

birthed, because she thought she was providing something wonderful for those parents and the

child, who perhaps never would have been born without her loving act.  She now has the burden

that the child she gave life to, a child she loves from having carried him in her womb, was in fact

born of a physical violation of his birth mother, and of a fraud committed against her and his

legitimate father, and that the crime that was committed will likely burden the child for his

lifetime.

**PARTIES AND JURISDICTION**

       1.      Plaintiff is over the age of eighteen, and is a resident and citizen of the State of

Tennessee.

       2.      Defendant John Doe is over the age of eighteen, and is a resident of Miami-Dade

County and citizen of the State of Florida.

       3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as it is

civil action where the amount in controversy exceeds the sum or value of $75,000.00, exclusive

of interest and costs, and is between citizens of different states.

       4.      In order to protect the identity of the child that Plaintiff bore, and because

Plaintiff is the victim of a sexual assault, Plaintiff uses the pseudonym JANE POE for herself in

the case style; JANE DOE and JOHN DOE for the perpetrators of the crimes alleged herein; and

FATHER for the man whom she intended to carry a child for, who is also a victim of the crimes

and torts alleged herein.[1]

---

[1] If any of the names of these parties were revealed publicly, a media firestorm surrounding the child would likely erupt.  To protect the child, the adults whose names are associated with the child cannot be revealed.

3

**FACTUAL ALLEGATIONS**

5.      In 2010, Plaintiff elected to assist non-party JANE DOE, and her husband at the time, non-party hereinafter referred to as FATHER, as the gestational surrogate carrier of JANE DOE's and FATHER's child.

6.      As a mother, Plaintiff wanted to share the blessing of parenthood with a couple that could not have their own children.  Plaintiff intended to act as a surrogate mother for modest compensation.  Her primary motivation was altruistic.

7.      Plaintiff desired to give life to a baby that would be raised in a healthy, loving environment by a married couple.

8.      In order to determine if she felt comfortable being impregnated with an embryo created from their sperm and egg, carrying a fetus, and creating a child for JANE DOE and FATHER, Plaintiff made extensive efforts to personally get to know JANE DOE and FATHER.

9.      Further, Plaintiff was informed that JANE DOE and FATHER were medically vetted for diseases, including sexually transmitted diseases, and for compatibility with Plaintiff. Plaintiff was subsequently informed that the results of this testing indicated that from a medical perspective, she would be a suitable gestational surrogate for JANE DOE and FATHER.

10.      Through in-person meetings, telephone discussions, correspondence, and the aforementioned medical testing, Plaintiff developed a level of trust in JANE DOE and FATHER that allowed Plaintiff to believe she was making the correct decision to allow their embryo to be implanted in her and to create a baby for them.

11.      From an emotional perspective, Plaintiff trusted that JANE DOE and FATHER would be suitable parents, and thus she was willing to undertake this risky, invasive, time-

consuming process to provide a family with a priceless gift, a baby that was the genetic offspring of a husband and wife who could not otherwise create a child of their own.

12.     The process of being a gestational surrogate is complicated and medically invasive for the gestational carrier.

13.     The process of being a gestational surrogate involves a high degree of contact into the most sensitive, personal and private parts of a woman's body.

14.     The process of being a gestational surrogate requires the surrogate to submit to invasive medical treatments, including being injected with hormones.

15.     The process of being a gestational surrogate requires the surrogate to experience the many burdens of gestating a fetus in utero.

16.     The process of being a gestational surrogate requires the surrogate to experience the pain of childbirth.

17.     The process of being a gestational surrogate evokes difficult emotions for the surrogate, who knows that she will part with the baby that she carries and gives birth to, emotions that are only ameliorated by the knowledge that she is engaging in a loving act to create a child for loving parents.

18.     Plaintiff submitted to the burdensome and painful surrogacy process described herein after being induced to do so by false representations made by JANE DOE, who was acting in conspiracy with JOHN DOE.

19.     At all material times, JOHN DOE knew that JANE DOE and FATHER had represented to Plaintiff that they were the genetic parents of the child she would carry, and that they had entered into a contract with Plaintiff to carry that child.

20.     At all material times, JOHN DOE knew that the contract between Plaintiff and JANE DOE and FATHER contained representations that the embryo that would be implanted in Plaintiff was made from the genetic material of JANE DOE and FATHER.

21.     JOHN DOE knew that the contract between Plaintiff and JANE DOE and FATHER contained representations that JANE DOE and FATHER would be the sole legal parents of the baby to be produced by the surrogate pregnancy.

22.     With JOHN DOE'S full knowledge, Plaintiff agreed to carry the baby on the condition that the baby would be the legal child of JANE DOE and FATHER exclusively.

23.     JOHN DOE thus knew that he could and should have no legal rights to the child to be produced by the *in vitro* fertilization process commissioned by JANE DOE and FATHER.

24.     In the spring of 2011, Plaintiff gave birth to a healthy baby, a baby that was immediately handed over to JANE DOE and FATHER, whom she believed were the genetic parents of the baby.

25.     The baby was not the genetic child of JANE DOE and FATHER, however.

26.     JANE DOE and JOHN DOE had secretly conspired to cause Plaintiff to unintentionally carry the baby that was genetically the offspring of JANE DOE and JOHN DOE.

27.     JOHN DOE provided his sperm to JANE DOE knowing that she would, by deceitful devices and methods, substitute it for the sperm of FATHER to be used in the *in vitro* process.

28.     JOHN DOE provided his sperm to JANE DOE in order to effectuate tricking Plaintiff into allowing herself to be unwittingly implanted with his genetic material.

29.     The underlying conduct undertaken in order to deceive Plaintiff was outrageous and appalling.

30.     Plaintiff never consented to being involved with JOHN DOE, let alone carry his child.

31.     JOHN DOE sexually battered Plaintiff.

32.     JOHN DOE's genetic material was implanted in Plaintiff's uterus, via her vaginal canal, without her consent.

33.     Plaintiff of course would never have agreed to participate in JANE DOE and JOHN DOE's vile scheme.

34.     Plaintiff never consented to being implanted with an embryo that was the child of JOHN DOE.

35.     Plaintiff has never even met JOHN DOE.

36.     FATHER, at all times material, had no knowledge that he was in fact not the genetic father of the baby that Plaintiff carried.

37.     Plaintiff, at all times material, had no knowledge that JOHN DOE's sperm was used to fertilize JANE DOE's egg, and that this resulting embryo was implanted into Plaintiff as part of a scheme meant to defraud FATHER of fatherhood and deceive Plaintiff into carrying the child of JANE DOE and JOHN DOE.

38.     JOHN DOE and JANE DOE conspired to maintain, and did maintain, the fact that they had substitute JOHN DOE's sperm into the *in vitro* fertilization process a secret until 2019.

39.     On or around April 2019, it was revealed to Plaintiff that she did not in fact carry the baby of JANE DOE and FATHER, and instead had carried the baby of JANE DOE and her paramour at the time, Defendant JOHN DOE.

40.     Plaintiff feels appalled and heartbroken by the secret plan executed by JANE DOE and JOHN DOE that selfishly used Plaintiff.

41.    Plaintiff considers the vile scheme hatched by JOHN DOE and JANE DOE to be hateful to the child that Plaintiff gave birth to, a child she loves from having carried him in her womb and given birth to him.

42.    Plaintiff suffered and continues to suffer additionally from fact that JOHN DOE revealed his and JANE DOE's scheme by asserting that he should have legal parental rights over the child that Plaintiff bore on behalf of JANE DOE and FATHER.

43.    Plaintiff suffered from knowing that the child she had given birth to was now the subject of a bitter custody battle likely to cause pain to the child and impact the rest of his life.

44.    Further, Plaintiff suffered from knowing that the child, as well as herself, could be the subject of extreme media exposure and the harsh glare of publicity should the crime committed by JANE DOE and JOHN DOE be revealed.

45.    If and when the aforementioned scheme becomes public, Plaintiff will be forced to endure more trauma, stress, emotional distress, and damages.  This potential exposure to scrutiny serves to cause even more anxiety and stress to Plaintiff.

46.    On the other hand, Plaintiff carries the burden of keeping what happened to her, FATHER, and the child she gave birth to secret.  Plaintiff suffers whether the secret is maintained, or whether it is made public.

47.    As a result of the stress, anxiety, mental anguish, and trauma that JANE DOE and JOHN DOE have caused her by running their vile scheme through her body, and in the process causing her to be battered physically and emotionally, Plaintiff has suffered from, and has been diagnosed with, post-traumatic stress disorder.

## COUNT I – SEXUAL BATTERY

48.     The general allegations described above in paragraphs 1 through 47 are incorporated by reference and are realleged herein.

49.     Defendant JOHN DOE intentionally and willfully caused Plaintiff to be battered, in that he induced offensive and harmful touching by the doctors and staff of the hospital that implanted an embryo via the vaginal canal and into the uterus of Plaintiff.

50.     JOHN DOE battered Plaintiff by causing his genetic material to be inserted via the vaginal canal and into the uterus of Plaintiff without her consent.

51.     Plaintiff did not consent and would not have consented to being touched had she known the embryo contained the genetic material of John Doe.

52.     Plaintiff would not have agreed to be implanted with an embryo that contained the genetic material of JOHN DOE.

53.     Plaintiff has been harmed by the offensive touching induced by JOHN DOE.

54.     Plaintiff suffers from post-traumatic stress syndrome.

55.     Defendant JOHN DOE intentionally caused the battery that has harmed Plaintiff.

WHEREFORE, Plaintiff demands judgment against JOHN DOE for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

56.     The allegations described above in paragraphs 1 through 47 are incorporated by reference and are realleged herein.

57.     Both JANE DOE and JOHN DOE clearly engaged in conduct that was deliberate, intentional and reckless in that it was certain to cause Plaintiff severe emotional distress.

58.     Both JANE DOE and JOHN DOE engaged in conduct that was clearly and plainly outrageous, and went beyond all bounds of decency, and involved conduct that is odious and utterly intolerable in a civilized society.

59.     JOHN DOE swore to the underlying fraud that resulted in Plaintiff's battery as described above and together with JANE DOE caused Plaintiff's severe emotional distress.

60.     JANE DOE and JOHN DOE's underlying scheme, as well as the act of publicly proclaiming their roles in the scheme and resulting battery, were utterly abhorrent and beyond reckless in a civilized society.

WHEREFORE, Plaintiff demands judgment against JOHN DOE for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

## COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

61.     The allegations described above in paragraphs 1 through 47 are incorporated by reference and are realleged herein.

62.     JOHN DOE knew or should have known that his overt and covert negligent and reckless acts would cause Plaintiff emotional distress.

63.     Said emotional distress has physically manifested itself in that Plaintiff suffers from, and has been diagnosed with, post-traumatic stress disorder.

WHEREFORE, Plaintiff demands judgment against JOHN DOE for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary

and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

**COUNT IV – CONVERSION OF SERVICES**

64.     The allegations described above in paragraphs 1 through 47 are incorporated by reference and are realleged herein.

65.     Plaintiff had a property interest in surrogacy services.

66.     JOHN DOE intentionally availed himself of those services through fraud.

67.     JOHN DOE obtained a direct benefit for himself through the services that Plaintiff provided, specifically, the creation of a genetic child of his.

68.     JOHN DOE has converted surrogacy services from Plaintiff without paying her for them, and intends to keep those services without paying for them.

WHEREFORE, Plaintiff demands judgment against JOHN DOE for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

**COUNT V – CONSPIRACY**

69.     The allegations described above in paragraphs 1 through 47 are incorporated by reference and are realleged herein.

70.     JANE DOE and JOHN DOE conspired in the scheme described above, for the purpose of defrauding and battering Plaintiff, in order to secretly create a child that was genetically related to both JANE DOE and JOHN DOE.

71.     The conspiracy perpetuated by JANE DOE and JOHN DOE resulted in and required the unlawful battery of Plaintiff.

11

72.     The conspiracy perpetuated by JANE DOE and JOHN DOE required numerous overt acts by both JANE DOE and JOHN DOE.

73.     The overt acts included JOHN DOE providing his sperm to JANE DOE knowing full-well that the sperm would be used to batter Plaintiff.

74.     The overt acts included JANE DOE misrepresenting to numerous medical professionals that the sperm of JOHN DOE was actually the sperm of FATHER, in order to eventually batter Plaintiff.

75.     The overt acts included JANE DOE misrepresenting to Plaintiff that the embryo Plaintiff would carry would be made from the sperm of FATHER.

76.     Each and every act and misrepresentation made by JANE DOE to further the conspiracy alleged herein was made with the knowledge and approval of JOHN DOE.

77.     Each and every act made by JOHN DOE to further the conspiracy alleged herein was made with the knowledge and approval of JANE DOE.

78.     As a result of the conspiracy between JANE DOE and JOHN DOE, Plaintiff has suffered, and will continue to suffer, physical and emotional injuries and damages.

WHEREFORE, Plaintiff demands a trial by jury and judgment against JOHN DOE for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands trial by jury.

Dated:  August 27, 2019

Respectfully submitted,

**do Campo & Thornton, P.A.**
Chase Bank Building
150 S.E. Second Ave, Ste. 602
Miami, Florida 33131
Telephone:  (305) 358-6600
Facsimile:  (305) 358-6601

By:

*/s/ John Thornton*
JOHN THORNTON
Florida Bar No. 004820
jt@dandtlaw.com