UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| JANE POE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-cv-23600-KMW |
| JOHN DOE, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Jane Poe, through undersigned counsel, hereby files this Response in Opposition to Defendant's Motion to Dismiss and as grounds therefore states:

**INTRODUCTION**

Plaintiff alleges she was surreptitiously impregnated without her consent by the Defendant. She alleges he conspired to and did conceal this crime until April 2019. Defendant moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing 1) that the action is time-barred; and 2) that Plaintiff fails to state a claim. These arguments fail.

    **I.    LEGAL STANDARD.**

When evaluating a motion to dismiss under Rule 12(b) (6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Worthy v. Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a Rule 12(b) (6) motion to dismiss, the Court must accept "the facts alleged in the complaint as true" and must "draw[] all reasonable inferences in the plaintiff's favor." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th

Cir. 2010). A Rule 12(b) (6) dismissal "on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008) (citing *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005)). A statute of limitations bar is "an affirmative defense, and . . . plaintiffs [are] not required to negate an affirmative defense in [their] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). Generally speaking, "[f]or better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *In re Southeast Banking Corp.,* 69 F.3d 1539, 1551 (11th Cir. 1995).

Defendant argues, without citing any allegation in the Complaint that would imply that the torts at issue took place in Florida, and without performing any choice of law analysis, that Florida law bars the actions on both substantive grounds and statute of limitations grounds. In this first responsive pleading, Plaintiff informs the Court of the application of foreign law to this action, as the applicable choice of law analysis reveals.[1]

## II. CHOICE OF LAW.

"A district court sitting in diversity applies the choice-of-law rules of the state in which it sits, in this case Florida." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 F. App'x 865, 873 (11th Cir. 2018). The Eleventh Circuit provides the following guidance on the process:

---

[1] A Plaintiff acts timely when it raises "in its complaint *or the first motion or response* when choice-of-law matters – the sources of non-forum law on which it seeks to rely." *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) (emphasis added) (finding waiver where Plaintiff failed to raise the issue to the district court but rather argued for the application of Florida law to the district court).

2

> As a preliminary matter, the court must characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc. Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue.
>
> Florida resolves conflict-of-laws questions according to the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws. The Restatement (Second) of Conflict of Laws provides a "General [Tort] Principle" in section 145 that is intended to inform courts as they apply the more specific "Choice of Law Principles" outlined in section 6.

*Grupo Televisa, S.A. v. Telemundo Communs. Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).

The five causes of action in this matter[2] clearly sound in tort. As such, the "significant relationship" test of Section 145 of the Restatement (Second) of Conflict of Laws applies. It provides:

> § 145 The General Principle
> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,
>     (b) the place where the conduct causing the injury occurred,
>     (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>     (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restat 2d of Conflict of Laws, § 145.[3] Amongst these factors

---

[2] The five counts are: Sexual Battery, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Conversion of Services and Conspiracy.

[3] Section 6 of the Restatement (Second) of Conflict of Laws provides:

> § 6 Choice-Of-Law Principles
> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

> [t]he first contact is the place where the injury occurred. The Florida Supreme Court has observed that "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law."

*Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 635 (S.D. Fla. 2008) *quoting Bishop v. Fla. Specialty Paint Co.,* 389 So. 2d 999, 1001 (Fla. 1980).

Despite the fact that a choice of law analysis applying the Florida's significant relationship test is required, Defendant's motion completely sidestepped it, and ignored the following facts: Plaintiff "is a resident and citizen of the State of Tennessee". Compl., DE 1 at ¶ 1. Neither Plaintiff nor Defendant resided in Florida at the time that Defendant conspired to batter Plaintiff. Plaintiff was residing in Tennessee, and Defendant's co-conspirator contacted her in Tennessee, and then went to Tennessee to recruit her to be a surrogate. The surrogacy agreement to which Plaintiff and Defendant's co-conspirator are parties was entered into in Tennessee and contains a choice of law provision stating that it is governed by the law of Tennessee. The IVF procedure took place in Missouri. Defendant travelled to Missouri (presumably from his home state, not Florida), met secretly at a hotel room in St. Louis where he provided his sperm, and his co-conspirator delivered his sperm to the clinic in St. Louis, Missouri. The IVF procedure – in which material that Plaintiff had not consented to being placed in her uterus was placed in her uterus by Defendant's deliberate deception – took place in

---

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restat 2d of Conflict of Laws, § 6.

4

St. Louis, Missouri. Plaintiff was thereby battered in Missouri and the theft of her services accomplished in Missouri. Plaintiff returned to Tennessee from Missouri, carried the child in Tennessee, and gave birth in Tennessee. Only after all of these acts had occurred did Defendant move to Florida. In 2019, Defendant and his co-conspirator revealed his crime. Compl., DE 1 at ¶ 38. This revelation was in Florida. In April 2019, while in Tennessee, Plaintiff learned of the violation of her person, and suffers emotional distress in Tennessee.

Defendant and his counsel were well aware of these facts and the implication of choice of law issues, yet raised none of them to the Court. Instead, they provide 10 pages of inapposite analysis. The correct analysis follows.

### III. UNDER THE APPLICABLE LAW, EACH COUNT IS TIMELY AND STATES A CLAIM.

**A. Count I – Sexual Battery.**

1. Choice of Law.

The choice of law analysis clearly points to Missouri for the sexual battery claim. Defendant ejaculated in a hotel room in Missouri and gave the sperm to his co-conspirator so she could deliver it to the IVF clinic in Missouri. Plaintiff was then violated when the result of this deception was inserted into her body in Missouri without her consent.

2. Statute of Limitations.

Missouri has a five-year statute of limitations for tort claims. Mo. Ann. Stat. § 516.120(4). However, for torts that occur in Missouri, "the damage must be actually sustained and capable of ascertainment before the statute of limitations begins to run." *Bus. Men's Assurance Co. v. Graham*, WD 45876, 1993 Mo. App. LEXIS 1381, at *13 (Ct. App. Sep. 7, 1993) (citing *Hasemeir v. Metro Sales*, Inc., 699 S.W.2d 439, 441 (Mo. App. 1985)). In 2014, the 8th Circuit examined the Statute of Limitations in Missouri and determined:

> The question of when damages are capable of ascertainment is an objective inquiry for the court to determine: *the statute of limitations begins to run when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury*. In *Powel v. Chaminade Coll. Prep., Inc.*, the Missouri Supreme Court reiterated this rule, stating *notice of sufficient information to alert plaintiff of the need to make inquiry was the trigger for the running of the statute of limitations*. Alternatively, the Missouri Supreme Court described the moment of claim accrual as the time when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages.

*Mahanna v. U.S. Bank Nat'l Ass'n*, 747 F.3d 998, 1002 (8th Cir. 2014) (internal citations and quotations omitted) (emphasis added). Defendant argues that Plaintiff fails to allege any facts that would allow Plaintiff to avoid statutes of limitations. Motion to Dismiss, DE 8 at n. 5, 11 and 15 and 3. This is simply not true. Plaintiff alleges "JOHN DOE and JANE DOE conspired to maintain, and did maintain, the fact that they had substituted JOHN DOE's sperm into the *in vitro* fertilization process a secret until 2019." Complaint, DE 1 at ¶ 38. Further, the gravamen of the Complaint is that Defendant and his paramour conspired "for the purpose of defrauding and battering Plaintiff, in order to secretly create a child that was genetically related to both JANE DOE and JOHN DOE." *Id*. at ¶ 70. Plaintiff had no information that could have possibly put her on alert to Defendant's secret actions until 2019. She had no reason to suspect that anyone other than the man she had consented to was part of the surrogacy process until Defendant revealed his crime in 2019. As such, the statute of limitations for sexual battery did not begin to run until 2019. The five-year statute has not run.

      3.      Plaintiff states a claim for battery under Missouri law.

Missouri law holds that "a battery consists of intended, offensive bodily contact with another person. Contact with the body is offensive if it offends a reasonable sense of personal dignity." *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 246 (Mo. Ct. App. 2006) (internal quotations and citations omitted).

Plaintiff's complaint describes facts that plainly evidence a claim for battery. In this case, given the nature of Plaintiff's claim, it is described as a *sexual* battery. Plaintiff endured contact with her body, including her sexual organs, that she did not consent to – including the implantation of an embryo that was fertilized with Defendant's sperm, not the sperm of the man she met and approved of, and under circumstances she did not agree to. The contact detailed in the complaint is objectively offensive; it offends a reasonable sense of personal dignity.

Defendant, analyzing the Florida criminal statute, argues that Plaintiff fails to state a cause of action for sexual battery. Defendant argues, based on Florida law, that sexual battery requires physical penetration or union. It is Missouri law, however, that should be looked to. The most analogous criminal statute in Missouri is sexual abuse in the second degree, which provides: "A person commits the offense of sexual abuse in the second degree if he or she purposely subjects another person to sexual contact without that person's consent." Mo. Rev. Stat. § 566.101. Sexual contact is defined as

> any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim

Mo. Rev. Stat. § 566.010(6). Here, the Defendant and his paramour conspired to deceive plaintiff by having their agent implant genetic material in plaintiff's uterus, through the vaginal canal, that she did not consent to receiving. That constitutes sexual contact under Missouri law. Under Missouri law, physical contact is not required to affect an assault or battery. In *State v. Dawson*, 985 S.W.2d 941, 953 (Mo. Ct. App. 1999) – which has very repellant facts, but facts that are similar to the instant matter – the defendant was convicted of assault by placing sperm in the coffee cup of a coworker resulting in her drinking it. *Id*. at 944. On appeal, the defendant argued that there was no assault because he never came into physical contact with the victim. *Id*.

7

at 951.  The *Dawson* court reviewed Missouri law, as well as the law of other jurisdictions, in determining that physical contact does not require actual physical contact by the person of the defendant.  *Id*. at 951-952.  The court noted that physical contact in Illinois was satisfied by having a physical object, namely the genitals of a dog, come into contact with the victim.  *Id*.  The court found that actions that that did not require touching, such as spitting on someone or throwing body fluids on a victim, were sufficient.  *Id*.  The court cited a treatise stating "that in the context of a battery, an application of force on the person of another can be accomplished by the aggressor himself, or by some force the aggressor puts in motion."  *Id.*  The treatise "further demonstrates that person-to-person contact is not required for a battery by citing to cases in which spitting . . . and directing a dog to attack someone constituted a battery."  *Id.*  Ultimately the court found that the defendant's actions constituted physical contact and sustained his conviction.  *Id*.  Here, the complaint clearly sets forth that the Defendant put in motion actions that led plaintiff to endure the most intimate physical contact against her will.  Like the defendant in Dawson, Defandant did not personally touch Plaintiff, but he did cause Plaintiff to be touched in intimate parts of her body with a substance that, once she knew what it was, she did not wish to be touched by.  Plaintiff clearly states a claim for sexual battery under Missouri law.

       Finally, Defendant argues that Count I does not state a cause of action because the miscited Florida sexual battery statute has an exception for a *bona fide* medical procedure.  This argument does not get off the ground because the analogous Missouri statute does not have that exception.  But even if the Florida law applied, the idea that Defendant could hide behind a statute intended to protect *bona fide* actors is laughable.  Count I states a cause of action, and the motion to dismiss it should be denied.

### B. Counts II and III – Infliction of Emotional Distress (intentional and negligent).

1. Choice of Law.

The infliction of emotional distress claims entail facts that heavily implicate both Tennessee and Missouri. Plaintiff was recruited by Defendant's co-conspirator in Tennessee, lives in Tennessee, learned of the facts that cause her emotional distress in Tennessee and suffers emotional distress in Tennessee. She was actually battered in Missouri, but went through the taxing process of preparing for the surrogacy process, carrying the child, giving birth and separating from the child in Tennessee. The only tie to Florida is that Defendant revealed his crime in Florida.

As the place of injury is normally the "decisive" factor, and as the majority of the factors implicate Tennessee, Plaintiff concludes that Tennessee law applies.

2. Statute of Limitations.

The statute of limitations for personal tort actions in Tennessee is one year. Tenn. Code Ann. § 28-3-104. However, Tennessee employs the discovery rule. The Supreme Court of Tennessee instructs that "a suit for personal injuries may be brought more than one year after the injury occurs, provided it is brought within one year after it is discovered or in the exercise of reasonable care and diligence should have been discovered." *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487, 493 (Tenn. 1975); *see also Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) ("It is now well-established that, where applicable, the discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained."). As shown above, Plaintiff alleges she was informed of the secret crime

that had been committed against her in April 2019; she filed suit in August 2019, within a year after discovery. Plaintiff's claims are not time-barred under Tennessee law.[4]

> 3. Plaintiff states a claim for both intentional and negligent infliction of emotional distress under Tennessee law.

> a. Intentional Infliction of Emotional Distress.

According to the Tennessee Supreme Court: "The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.,* 367 S.W.3d 196, 205 (Tenn. 2012). Plaintiff's Complaint alleges facts that meet all three factors.

As to the first factor, Plaintiff's allegations in the instant case describe facts that show Defendant's conduct was both intentional *and* reckless. Again, the underlying facts here are not in dispute. Defendant brazenly tricked Plaintiff into creating a genetic child with his paramour

---

[4]The doctrine of fraudulent concealment likewise operates to prevent the running of the statute of limitations. "Fraudulent concealment has been called a 'close cousin of the discovery rule.'" *In re Estate of Morris v. Morris*, 329 S.W.3d 779, 784 (Tenn. Ct. App. 2009) (citations omitted).

> The elements of fraudulent concealment as set forth by the Tennessee Supreme Court are: (1) an affirmative act by the defendant to conceal the cause of action or the failure to disclose material facts despite a duty to speak; (2) that the plaintiff "could not have discovered the cause of action despite exercising reasonable care and diligence"; (3) the defendant must be aware of the wrong; (4) the "concealment of material information from the plaintiff."

*Id.* (citations omitted). Here, Defendant clearly acted surreptitiously to conceal the cause of action both in its commission and in the years since. The Plaintiff could not have discovered the cause of action. The Defendant, while apparently morally challenged, must have been aware of the wrong. And, material information – the source of genetic material to be put into her body and the genetic father of a child she carried and gave birth to – was concealed from Plaintiff. While the tort requires the existence of a duty, Plaintiff respectfully submits that a man has a duty to inform a woman that he has impregnated her surreptitiously. The doctrine of fraudulent concealment applies; Plaintiff's claim, filed months after she learned of its existence, is not time-barred.

through a series of intentional acts that resulted in Plaintiff's battery and her subsequent emotional distress. *See* Complaint ¶¶ 18-42, 56-60. This was clearly reckless in that Defendant gave no care or concern to the potential damage that his actions would inflict on Plaintiff. Further, it is the law in Tennessee that the reckless conduct "need not be directed at a specific person or occur in the plaintiff's presence." *Louisville Land Co.,* 367 S.W.3d at 205.

As to the second factor, the conduct by the Defendant and his paramour alleged in the complaint is plainly and objectively "so outrageous that it is not tolerated by civilized society". Plaintiff properly pled this element. *See* Complaint, ¶ 29 and Complaint generally.

Finally, the third factor is fulfilled here as the Plaintiff has properly alleged that she has suffered and continues to suffer from serious mental injury. Plaintiff suffers from *inter alia* post-traumatic stress disorder. *See* Complaint ¶¶ 40, 42-47, 56-63.

    b. Negligent Infliction of Emotional Distress.

Under Tennessee law, the "elements of a claim for [**NIED**] include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation. . . . In addition, the plaintiff must prove that the defendant's conduct caused a serious or severe emotional injury." *Webber v. Nat'l Gen. Assurance Co.*, No. 4:14cv490-MW/CAS, 2015 U.S. Dist. LEXIS 179487, at *28-29 (N.D. Fla. Nov. 1, 2015). The only issue that might be in question is whether Defendant has a duty to Plaintiff. Plaintiff respectfully submits that one owes a duty to all women not to impregnate them without their consent. Although the facts of this case are unique, Plaintiff rests on this modest proposition.

    **C. Count IV – Conversion of Services.**

    1. Choice of Law.

Plaintiff offered surrogacy services in Tennessee and was recruited in Tennessee by Defendant's co-conspirator.  Defendant commandeered those services to his own purposes by substituting his sperm in Missouri.  Defendant took no actions in Tennessee.  Because the actual commandeering took place in Missouri, Plaintiff concludes that she was injured there, and so the law of Missouri applies.  *See Bishop*, 389 So. 2d at 1001.

2. Statute of Limitations.

The Missouri statute of limitations for conversion of services, which falls under the definition of "injury to the person or rights of another, not arising on contract and not herein otherwise enumerated" is five years.  Mo. Rev. Stat. § 516.120.  However, as shown above, the statute of limitations in Missouri begins to run when the evidence is such to place a reasonably prudent person on notice of a potentially actionable injury.  *See Mahanna*, 747 F.3d at 1002.  Here, Plaintiff did not have such information until 2019.  The statute of limitations has not run.

3. Plaintiff states a claim for conversion of services under Missouri law.

In Missouri, the following three elements must be established to prove conversion: (1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession.  *See Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 596 (Mo. Ct. App. 2000).

The question is thus whether Plaintiff had a property right in her own services.  Missouri has long recognized a property right in one's labors.  "The right to labor . . . upon such terms as may be agreed upon, is both a liberty and property right . . ." *State v. Mo. Tie & Timber Co.*, 181 Mo. 536, 559, 80 S.W. 933, 940 (1904).  Defendant does not argue that he did not take her services in which she had a property right.  He argues, rather, that she should not be able to sue

her because someone else paid for them. Motion to Dismiss, DE 8 at p. 8. This argument, which is of the nature of an affirmative defense of offset of damages, does not work to defeat the claim. Defendant can point to no basis in law and no precedent that supports absolving Defendant of the duty to pay for what he has taken. The motion to dismiss the conversion claim should be denied.

### D. Count V – Conspiracy.

Plaintiff is not apprised of sufficient facts to determine what law would apply to the conspiracy claim. For example, Plaintiff does not know Defendant's whereabouts when he conspired with Plaintiff. Further, given that it appears that the laws of different jurisdictions apply to the underlying claims, it could be a complicated analysis, and it could be that different law applies to the conspiracy to commit the different claims.

However, this analysis appears unnecessary at this juncture. Given that the sole objection to the conspiracy claim is that there is no underlying actionable tort or wrong (*see* Motion to Dismiss, DE 9 at p. 9), and given that the Complaint clearly alleges actionable torts or wrongs, Defendant's motion to dismiss as concerns the conspiracy claim fails.

### CONCLUSION

For the reasons stated herein, the Motion to Dismiss should be denied.

Respectfully submitted,

**do Campo & Thornton, P.A.**
Chase Bank Building
150 S.E. Second Avenue, Suite 602
Miami, Florida 33131
Telephone: (305) 358-6600
Facsimile: (305) 358-6601

By:
*/s/ John Thornton*
JOHN THORNTON
Florida Bar No. 004820
jt@dandtlaw.com

13

## Certificate of Service

**I hereby certify** that on October 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ John Thornton*
JOHN THORNTON