## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:19-cv-23600-Williams/Torres

|  |  |  |
|---|---|---|
| JANE POE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| JOHN DOE and JANE DOE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### FIRST AMENDED COMPLAINT

Plaintiff, Jane Poe, through undersigned counsel, hereby files this First Amended Complaint and alleges:

### INTRODUCTION

Defendants in this matter used false pretenses to impregnate Plaintiff, a woman John Doe had never met, without her consent.  To accomplish this crime, Defendants first conspired to recruit the Plaintiff to act as a surrogate mother to carry to term an embryo that had been created through *in vitro* fertilization.  Plaintiff had placed her profile on a website that connects surrogates to prospective parents for noble reasons – that is to help a couple that could not have a child enjoy the gift of life, and to give life to an unborn baby.  Defendant Jane Doe contacted Plaintiff and told her that she and her husband wished to have a baby.  She did not tell Plaintiff however, that in fact she and the Defendant John Doe intended to swap the Defendant John Doe's semen into the *in vitro* process, and that she would be impregnated not with the child of the man who she agreed to have a baby for, but with the child of John Doe.

Plaintiff was very careful in vetting the couple for whom she would carry a child. She met the husband, whom she perceived to be a good person. She was impressed by the fact that he came from a large and loving family. He was married to the intended mother, Jane Doe. He appeared to be someone who would be a good father to the child she was creating. Jane Doe stressed these facts about her husband, the intended father, in order to convince Plaintiff to carry his child. Based on these facts and her personal impression of the husband, Plaintiff made the decision to share her body with the intended husband and begin the surrogacy process with the goal of carrying a child for this man, the husband.

In the process, the husband (the man who all those involved, except Jane Doe and John Doe, thought was providing the semen) was medically vetted for diseases, including sexually transmitted diseases, and for compatibility with Plaintiff. This assured Plaintiff that the process was safe and also reconfirmed for her that the husband was the father. Only after meeting the husband, desiring to create a child for him, and being told that the husband had passed medical vetting for diseases and compatibility, did Plaintiff submit to the invasive process of having an embryo placed in her uterus for the purposed of creating a legitimate child of the husband. Only with the assurances she had received, did she undertake the monumental and task of carrying the baby, giving birth to the baby, and handing the baby over to the commissioning parents.

But, it turns out, the husband was also being deceived. Defendants Jane Doe and John Doe had schemed all along to, and did, swap Defendant's sperm into the *in vitro* fertilization process. Plaintiff was impregnated not by the man she intended and consented to be impregnated by, but by Defendant John Doe. Defendant's genetic material was put in her against her will and without her consent, violating her body and her heartfelt personal choices. She created a child not for a man whom she met and whom she judged to be a good man and whom she had

thoughtfully chosen to share her body and womb with, but for a total stranger who schemed to violate her body in a most devious and deranged manner.  She had consented to being impregnated only by the man who had been introduced to her as the prospective father.  She believed she was creating a child who would be born legitimately into a marriage and that there could be no claim of illegitimacy.  She created a child not for a mother who intended in good faith to create a legitimate child with her husband, but for a mother who was hoping to create an illegitimate child and who was defrauding her husband to get him to pay for the *in vitro* and surrogacy processes.  She undertook the painful and giving surrogacy process, in which she had to part with a baby she had just birthed, because she thought she was providing something wonderful for those parents and the child, who perhaps never would have been born without her loving act.  She now has the burden that the child she gave life to, a child she loves from having carried him in her womb, was in fact born of a physical violation of herself, his birth mother, and of a fraud committed against her and his legitimate father, and that the crime that was committed will likely burden the child for his lifetime.

## PARTIES AND JURISDICTION

1.     Plaintiff is over the age of eighteen and is a resident and citizen of the State of Tennessee.

2.     Defendant John Doe is over the age of eighteen and is a resident of Miami-Dade County and citizen of the State of Florida.

3.     Defendant Jane Doe is over the age of eighteen and is a resident of Miami-Dade County and citizen of the State of Florida.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as it is civil action where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

5.      All conditions precedent to the bringing of this action have been satisfied.

6.      In order to protect the identity of the child that Plaintiff bore, and because Plaintiff is the victim of a sexual assault, Plaintiff uses the pseudonym "Jane Poe" or "Plaintiff" for herself in the case style; "Jane Doe" and "John Doe" or "Defendants" for the Defendants, the perpetrators of the crimes alleged herein; and "Father" for the man whom she intended to carry a child for, who is also a victim of the crimes and torts alleged herein.[1]  Further, to protect identities, the exhibit to this complaint has been redacted.

## FACTUAL ALLEGATIONS

7.      In 2010, Plaintiff elected to assist Jane Doe, and her husband at the time, non-party hereinafter referred to as Father, as the gestational surrogate carrier of Jane Doe's and Father's child.

8.      As a mother, Plaintiff wanted to share the blessing of parenthood with a couple that could not have their own children.  Plaintiff intended to act as a surrogate mother for modest compensation.  Her primary motivation was altruistic.

9.      Plaintiff desired to give life to a baby that would be raised in a healthy, loving environment by a married couple.

10.      Between March 7 and March 10, 2010, Jane Doe contacted Jane Poe at Jane Doe's residence in Tennessee, and, in multiple communications, falsely represented to Jane Poe

---

[1] If any of the names of these parties were revealed publicly, a media firestorm surrounding the child would likely erupt.  To protect the child, the adults whose names are associated with the child cannot be revealed.

that she and her husband, Father, were seeking a surrogate to carry their child.  She concealed the material fact that she intended to surreptitiously swap the semen of another man, John Doe, into the *in vitro* process.

11.     In order to determine if she felt comfortable creating a child for Jane Doe and Father, Plaintiff made extensive efforts to personally get to know Jane Doe and Father beyond these initial contacts.

12.     Jane Doe travelled from her home in Miami, Florida to Tennessee with Father to recruit, or "court" Jane Poe.  On or around March 8, 2010, at a meeting at the home of Jane Poe in a suburb outside of Nashville, Tennessee, Jane Doe again falsely represented to Jane Poe that she was seeking a surrogate to carry a child for her and Father.  She concealed the material fact that she intended to surreptitiously swap the semen of another man, John Doe, into the *in vitro* process.

13.     Jane Doe induced Jane Poe's agreement to serve as a surrogate through false representations.  Jane Poe agreed to carry a child for Jane Doe and Father, not knowing that Jane Doe had conspired all along with the imposter John Doe to surreptitiously swap his into the *in vitro* process, and thereby impregnate Jane Poe without her consent.

14.     Plaintiff entered into a Surrogacy Agreement which identified Father by proper name as the "Intended Father" and stated, "The Process will involve the Intended Mother producing eggs and the Intended Father producing semen that will be joined together to create embryos."  *See* Surrogacy Agreement attached hereto as Exhibit A at ¶ 16.

15.      At the time of entering into the Surrogacy Agreement, Jane Doe knew that the above statement was false, as she intended to secretly substitute the semen of Father with the semen of John Doe.

16.     The Surrogacy Agreement also provided that the Intended Parents would be subjected to tests for sexually transmitted diseases.  *Id* at ¶ 17.

17.     At the time of entering into the Surrogacy Agreement, Jane Doe knew that this paragraph was misleading, as she intended to secretly substitute the semen of Father with the semen of John Doe.

18.     Thereafter, Father was vetted for diseases, including sexually transmitted diseases, and for compatibility with Plaintiff.  Plaintiff was informed that Jane Doe and Father were medically vetted for diseases, including sexually transmitted diseases, and for compatibility with Plaintiff.

19.     Jane Doe and John Doe knew that Father was vetted for diseases, including sexually transmitted diseases, and for compatibility with Plaintiff.

20.     Jane Doe and John Doe knew that John Doe was not vetted for diseases, including sexually transmitted diseases, and for compatibility with Plaintiff.

21.     Plaintiff was informed that the results of this testing indicated that from a medical perspective, she would be a suitable gestational surrogate for Jane Doe and Father.  The medical vetting process bolstered Plaintiff's belief that she was being impregnated with an embryo created with the semen of Father.

22.     Jane Poe never would have agreed and did not agree to be impregnated in the surrogacy process by a man who had not been medically vetted both for sexually transmitted diseases and for compatibility that would guard against complications for the child.

23.     Jane Poe never would have agreed and did not agree to be impregnated in the surrogacy process by a man who was surreptitiously swapping his semen into the *in vitro* process that was commissioned by a married couple.

24.     Jane Poe never would have agreed and did not agree to participate in a fraud against the Father.

25.     Jane Poe never would have agreed and did not agree to purposefully create a child who could be burdened by the fact that he was the result of a criminal conspiracy to defraud and sexually batter.

26.     Jane Poe never would have agreed and did not agree to be impregnated by John Doe.

27.     Jane Doe and John Doe knew that Jane Poe never would have agreed to be a surrogate had she known that it was John Doe's semen that would be used to create the child, so they kept this fact secret from her.

28.     Through in-person meetings, telephone discussions, correspondence, and the aforementioned medical testing, Plaintiff developed a level of trust in Jane Doe and Father that allowed Plaintiff to believe she was making the correct decision to allow their embryo to be implanted in her and to create a baby for them.

29.     From an emotional perspective, Plaintiff trusted that Jane Doe and Father would be suitable parents, and thus she was willing to undertake this risky, invasive, time-consuming process to provide a family with a priceless gift, a baby that was the genetic offspring of a husband and wife who could not otherwise create a child of their own.

30.     The process of being a gestational surrogate is complicated and medically invasive for the gestational carrier.

31.     The process of being a gestational surrogate involves a high degree of contact into the most sensitive, personal and private parts of a woman's body.

32.     The process of being a gestational surrogate requires the surrogate to submit to invasive medical treatments, including being repeatedly injected with hormones.

33.     The process of being a gestational surrogate requires the surrogate to experience the many burdens of gestating a fetus in utero.

34.     The process of being a gestational surrogate requires the surrogate to experience the pain of childbirth.

35.     The process of being a gestational surrogate evokes difficult emotions for the surrogate, who knows that she will part with the baby that she carries and gives birth to, emotions that are only ameliorated by the knowledge that she is engaging in a loving act to create a child for loving parents.

36.     Plaintiff submitted to the burdensome and painful surrogacy process described herein after being induced to do so by false representations made by Jane Doe, who was acting in conspiracy with John Doe.

37.     At all material times, John Doe knew that Jane Doe and Father had represented to Plaintiff that they were the genetic parents of the child she would carry, and that they had entered into a contract with Plaintiff to carry that child.

38.     At all material times, John Doe and Jane Doe knew that the contract between Plaintiff and Jane Doe and Father contained false representations that the embryo that would be implanted in Plaintiff was made from the genetic material of Jane Doe and Father, specifically that the egg of mother and the semen of Father would be used to create an embryo that would be implanted into Jane Poe.

39.     Jane Doe knew that the representations she made to induce Jane Poe to serve as a surrogate were false.

40.     John Doe knew that Jane Doe made false representations to induce Jane Poe to serve as a surrogate.

41.     John Doe knew that the contract between Plaintiff and Jane Doe and Father contained representations that Jane Doe and Father would be the sole legal parents of the baby to be produced by the surrogate pregnancy.

42.     With John Doe's full knowledge, Plaintiff agreed to carry the baby on the condition that the baby would be the legal child of Jane Doe and Father exclusively.

43.     John Doe thus knew that he could and should have no legal rights to the child to be produced by the *in vitro* fertilization process commissioned by Jane Doe and Father.

44.     Jane Doe and John Doe acted together to secretly substitute the semen of Father with the semen of John Doe.

45.     On information and belief, in 2010, John Doe was living in a Northeastern state, from which he travelled to Missouri for the purpose of surreptitiously swapping his semen into the *in vitro* process commissioned by Jane Doe and Father.

46.     In 2010, Jane Doe and John Doe, by deceitful devices and methods, substituted the semen of John Doe into the *in vitro* process that Jane Doe had tricked Plaintiff into being a part of.  Jane Doe provided the substituted semen to the fertility clinic in St. Louis, Missouri.

47.     As a result of Jane Doe and John Doe's actions, John Doe's genetic material was implanted in Plaintiff's uterus, via her vaginal canal, without her consent, in St. Louis, Missouri in the summer of 2010.

48.     John Doe and Jane Doe caused forces to be put in motion in St. Louis, Missouri that caused the Plaintiff to be touched in St. Louis Missouri with a substance that she did not want to be touched with in the most intimate part of her body.

49.     Jane Doe and John Doe had secretly conspired to cause and did cause Plaintiff to unintentionally be impregnated with an embryo that was genetically the offspring of Jane Doe and John Doe.

50.     Plaintiff never consented to being involved with John Doe, let alone carry his child.  Plaintiff had never even met John Doe.

51.     Plaintiff of course would never have agreed to participate in Jane Doe and John Doe's vile scheme.

52.     After being impregnated, Jane Doe returned to suburban Nashville, Tennessee to carry the baby.

53.     In the spring of 2011, in suburban Nashville, Tennessee, Plaintiff gave birth to a healthy baby, a baby that was immediately handed over to Jane Doe and Father, whom she believed were the genetic parents of the baby.

54.     The baby was not the genetic child of Jane Doe and Father, however.

55.     Father, at all times material hereto, had no knowledge that he was in fact not the genetic father of the baby that Plaintiff carried.

56.     Plaintiff, at all times material, had no knowledge that John Doe's sperm was used to fertilize Jane Doe's egg, and that this resulting embryo was implanted into Plaintiff as part of a scheme meant to defraud Father of fatherhood and deceive Plaintiff into carrying the child of Jane Doe and John Doe.  In fact, the scheme was unimaginable.

57.     John Doe and Jane conspired to maintain, and did maintain, the fact that they had substitute John Doe's sperm into the *in vitro* fertilization process a secret until 2019.

58.     On or around April 2019, it was revealed to Plaintiff in Tennessee that she had not in fact carried the baby of Jane Doe and Father, but instead had carried the baby of Jane Doe and her paramour at the time, Defendant John Doe.

59.     Plaintiff feels appalled and heartbroken by the secret plan executed by Jane Doe and John Doe that selfishly used Plaintiff.

60.     Plaintiff considers the vile scheme hatched by John Doe and Jane Doe to be hateful to the child that Plaintiff gave birth to, a child she loves from having carried him in her womb and given birth to him.

61.     Plaintiff suffered and continues to suffer additionally from fact that John Doe revealed his and Jane Doe's scheme by asserting that he should have parental rights over the child that Plaintiff bore on behalf of Jane Doe and Father.

62.     Plaintiff suffered from knowing that the child she had given birth to was now the subject of a bitter custody battle likely to cause pain to the child and impact the rest of his life.

63.     Further, Plaintiff suffered from knowing that the child, as well as herself, could be the subject of extreme media exposure and the harsh glare of publicity should the crime committed by Jane Doe and John Doe be revealed.

64.     If and when the aforementioned scheme becomes public, Plaintiff will be forced to endure more trauma, stress, emotional distress, and damages.  This potential exposure to scrutiny serves to cause even more anxiety and stress to Plaintiff.

65.     On the other hand, Plaintiff carries the burden of keeping what happened to her, Father, and the child she gave birth to secret.  Plaintiff suffers whether the secret is maintained, or whether it is made public.

66.     As a result of the stress, anxiety, mental anguish, and trauma that Jane Doe and John Doe have caused her by running their vile scheme through her body, and in the process causing her to be battered physically and emotionally, Plaintiff has suffered from, and has been diagnosed with, post-traumatic stress disorder.

## COUNT I – FRAUD IN THE INDUCEMENT

67.     The general allegations described above in paragraphs 1 through 51 are incorporated by reference and are realleged herein.

68.     Jane Doe induced Jane Poe to enter into the Surrogacy Agreement through fraudulent misrepresentations, as alleged herein.

69.     Specifically, Jane Doe falsely represented the material fact that the embryo to be implanted into Jane Poe would be created with the semen of Father.

70.     Jane Doe knew this material fact was false.

71.     Jane Doe intended to induce Jane Poe's reliance on this false statement of material fact.

72.     Jane Poe relied on the statement under conditions that made that reliance reasonable.

73.     Jane Poe was injured.

Wherefore Jane Poe requests that the Surrogacy Agreement be declared void.

## COUNT II – SEXUAL BATTERY

74.     The general allegations described above in paragraphs 1 through 66 are incorporated by reference and are realleged herein.

75.     Defendants John Doe and Jane Doe intentionally and willfully caused Plaintiff to be sexually battered, in that they induced offensive and harmful touching by the doctors and staff

of the fertility clinic in St. Louis, Missouri that implanted an embryo via the vaginal canal and into the uterus of Plaintiff and thereby impregnated Plaintiff without her consent.

76.   John Doe and Jane Doe battered Plaintiff by causing John Doe's genetic material to be inserted via the vaginal canal and into the uterus of Plaintiff without her consent.

77.   Plaintiff did not consent and would not have consented to being touched had she known the embryo contained the genetic material of John Doe.

78.   Plaintiff would not have agreed to be implanted with an embryo that contained the genetic material of John Doe.

79.   Plaintiff did not agree to be impregnated by John Doe.

80.   Plaintiff has been harmed by the offensive touching induced by John Doe and Jane Doe.

81.   Plaintiff suffers from post-traumatic stress syndrome.

82.   Defendants John Doe and Jane Doe intentionally caused the battery that has harmed Plaintiff.  Defendants John Doe and Jane Doe engaged in willful, wanton and malicious conduct.

WHEREFORE, Plaintiff demands judgment against John Doe and Jane Doe for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

## COUNT III – BATTERY

83.   The allegations described above in paragraphs 1 through 66 are incorporated by reference and are realleged herein.

84.     Defendants John Doe and Jane Doe intentionally and willfully caused Plaintiff to be battered, in that they induced Plaintiff to submit to invasive medical treatments both in Tennessee and Missouri.  These invasive medical treatments included injections and other medical treatments and examinations.

85.     Plaintiff has been harmed by the offensive touching induced by John Doe and Jane Doe.

86.     Plaintiff suffers from post-traumatic stress syndrome.

87.     Defendants John Doe and Jane Doe intentionally caused the battery that has harmed Plaintiff.  Defendants John Doe and Jane Doe engaged in willful, wanton and malicious conduct.

WHEREFORE, Plaintiff demands judgment against John Doe and Jane Doe for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

88.     The allegations described above in paragraphs 1 through 66 are incorporated by reference and are realleged herein.

89.     Both Jane Doe and John Doe clearly engaged in conduct that was deliberate, intentional and reckless in that it was certain to cause Plaintiff severe emotional distress.

90.     Both Jane Doe and John Doe engaged in conduct that was clearly and plainly outrageous, and went beyond all bounds of decency, and involved conduct that is odious and utterly intolerable in a civilized society.

91.     John Doe publicly swore to the underlying fraud that resulted in Plaintiff's battery.  Jane Doe has admitted her role in the underlying fraud in legal proceedings.

92.     Jane Doe and John Doe's underlying scheme to impregnate Plaintiff without her consent, as well as the act of publicly proclaiming their roles in the scheme and resulting battery, were utterly abhorrent and beyond reckless in a civilized society.

93.     Defendants John Doe and Jane Doe engaged in willful, wanton and malicious conduct that was clearly likely to cause Plaintiff severe emotional distress.

94.     Defendants' conduct caused severe emotional distress that resulted in serious mental injury to Plaintiff.  Plaintiff suffers from post-traumatic stress syndrome.  Any reasonable person would not be able to cope with being surreptitiously impregnated as alleged herein.

95.     Jane Doe and John Doe recruited Plaintiff in Tennessee and she suffers her emotional distress in Tennessee.

WHEREFORE, Plaintiff demands judgment against John Doe and Jane Doe for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

96.     The allegations described above in paragraphs 1 through 66 are incorporated by reference and are realleged herein.

97.     Jane Doe owed Plaintiff a duty, having recruited her as a surrogate, to treat her with utmost care and respect and act according to the representations she made to her in recruiting her, as well as the representations she made in the Surrogacy Agreement.

98.     John Doe owed a duty to Plaintiff, having chosen to impregnate her, to inform her of his intention to impregnate her, so that she could choose whether to consent or not.

99.     Defendants breached their duties to Plaintiff by, *inter alia*, covertly impregnating her without her consent and publicly declaring their crime.

100.     John Doe publicly swore to the underlying fraud that resulted in Plaintiff's battery.  Jane Doe has admitted her role in the underlying fraud in legal proceedings.

101.     John Doe and Jane Doe knew or should have known that their covert and overt negligent and reckless acts would cause Plaintiff emotional distress.

102.     Defendants John Doe and Jane Doe engaged in willful, wanton and malicious conduct that was clearly likely to cause Plaintiff severe emotional distress.

103.     Defendants' conduct resulted in serious mental injury to Plaintiff.  Plaintiff suffers from post-traumatic stress syndrome.  Any reasonable person would not be able to cope with being surreptitiously impregnated as alleged herein.

WHEREFORE, Plaintiff demands judgment against JOHN DOE for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

## COUNT VI – CONVERSION OF SERVICES

104.     The allegations described above in paragraphs 1 through 51 are incorporated by reference and are realleged herein.

105.     Plaintiff had a property interest in surrogacy services.

106.     John Doe intentionally availed himself of those services through fraud when he caused her to be impregnated with his offspring in St. Louis, Missouri.

107.   John Doe obtained a direct benefit for himself through the services that Plaintiff provided, specifically, the creation of a genetic child of his.

108.   Defendant deprived Plaintiff of the right to possession of her services.

109.   Defendants John Doe engaged in willful, wanton and malicious conduct in the conversion of surrogacy services.

110.   John Doe has converted surrogacy services from Plaintiff without paying her for them, and intends to keep those services without paying for them.

WHEREFORE, Plaintiff demands judgment against John Doe for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

## COUNT VII – CONSPIRACY

111.   The allegations described above in paragraphs 1 through 66 are incorporated by reference and are realleged herein.

112.   Jane Doe and John Doe conspired in the scheme described above, for the purpose of defrauding and battering Plaintiff, in order to trick her into carrying a child for John Doe.

113.   The conspiracy perpetuated by Jane Doe and John Doe resulted in and required the unlawful battery of Plaintiff.

114.   The conspiracy perpetuated by Jane Doe and John Doe required numerous overt acts by both Jane Doe and John Doe.

115.   The overt acts included John Doe providing his semen to Jane Doe knowing full-well that the semen would be used to batter Plaintiff.

116.     The overt acts included Jane Doe misrepresenting to numerous medical professionals that the sperm of John Doe was actually the sperm of Father, in order to eventually batter Plaintiff.

117.     The overt acts included Jane Doe misrepresenting to Plaintiff that the embryo Plaintiff would carry would be made from the sperm of Father.

118.     Each and every act and misrepresentation made by Jane Doe to further the conspiracy alleged herein was made with the knowledge and approval of John Doe.

119.     Each and every act made by John Doe to further the conspiracy alleged herein was made with the knowledge and approval of Jane Doe.

120.     Defendants John Doe and Jane Doe engaged in willful, wanton and malicious conduct in carrying out their conspiracy.

121.     As a result of the conspiracy between Jane Doe and John Doe, Plaintiff has suffered, and will continue to suffer, physical and emotional injuries and damages.

WHEREFORE, Plaintiff demands a trial by jury and judgment against John Doe and Jane Doe for compensatory damages, special damages, damages for past, present and future medical expenses, exemplary and punitive damages upon showing of basis for same, pain and suffering, and such other relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands trial by jury.

Dated:  January 6, 2020.

Respectfully submitted,

**do Campo & Thornton, P.A.**
Chase Bank Building
150 S.E. Second Ave, Ste. 602

Miami, Florida 33131
Telephone:  (305) 358-6600
Facsimile:  (305) 358-6601

By:

*/s/ John Thornton*
JOHN THORNTON
Florida Bar No. 004820
jt@dandtlaw.com

## CERTIFICATE OF SERVICE

**I hereby certify** that on January 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ John Thornton*
JOHN THORNTON